John GRIDLEY, Jr., Appellee,

v.

John W. CUNNINGHAM, Appellant.

John N. GRIDLEY, III, Appellee,

v.

John W. CUNNINGHAM, Appellant.

Nos. 76–1480, 76–1481.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 12, 1977.

Decided Feb. 24, 1977.

Paul N. Cotro-Manes, Salt Lake City, Utah, for appellant.

Gary J. Pashby, Sioux Falls, S.D., for appellee.

Before HEANEY and STEPHENSON, Circuit Judges, and STUART,* District Judge.

STUART, District Judge.

In separate actions John Gridley Jr. and his son, John Gridley III, sought to recover damages for losses sustained from their purchase of certain Sayre & Fisher Company (S & F) securities. The actions were joined for trial and appeal. Judgment by default was entered against S & F after it became bankrupt. The trial court[1] awarded judgment in favor of each plaintiff in the amount of $50,000 against John W. Cunningham on securities violation counts and in favor of Cunningham on the common law fraud counts. The defendant, Cunningham, has appealed raising issues as to the statutes of limitations and plaintiffs alleged failure to make timely tender back of the securities.

Early in April 1972, while the Gridleys were in California, the contemplated merger of S & F with American General Finance Corporation was discussed with a friend. They became interested in the investment opportunity, and upon their return to Sioux Falls, South Dakota, John Jr. contacted defendant Cunningham, Executive Vice President of S & F. After some telephone conversations John Jr. decided to purchase 25,000 shares of S & F stock at $2.00 a share. John III decided to purchase a $75,000 face value convertible debenture with an 8% annual interest rate for $50,000.

On April 19, 1972, in accordance with instructions received from Cunningham, the Gridleys forwarded $100,000 to a trust fund in San Diego. Cunningham brought the necessary papers to Sioux Falls the same day and the transaction was completed in his motel room that evening. It was during this conversation that statements were made or omitted that resulted in a finding of violations of section 12(1) and (2) of the

Securities Act of 1933 (The Act), 15 U.S.C. § 77*l*(1) and (2).

Proceedings to register the stock purchased by John Jr. with the SEC were to begin within five days after purchase. This was not done. As he was unable to get a satisfactory answer to his inquiries, John Jr. brought an action in the United States District Court of South Dakota against Sayre & Fisher for breach of contract on November 8, 1972.

John III did not receive the interest on the convertible debentures which became due April 19, 1973. On June 4, 1973, he filed a complaint in the same court alleging in one count breach of contract by S & F and common law fraud against Cunningham and Sayre & Fisher in a second count. On the same date John Jr. amended his complaint against S & F by adding a common law fraud count against S & F and Cunningham.

On April 30, 1974, the court allowed John Jr. and John III to amend their complaints to add a count against Cunningham alleging that he violated sections 12(1) and (2) of The Act, 15 U.S.C. 77*l*(1) and (2).

The issues before us here arise out of the cause of action stated in the April 30 amendment.

### John Jr.'s Section 12(1) Claim

■ A section 12(1) claim must be brought within one year after the violation. Section 13 of The Act, 15 U.S.C. 77m. The trial court held John Jr.'s section 12(1) action was not barred under the statute because he had commenced a contract action against S & F on November 8, 1972, well within the year after the violation which occurred, April 19, 1972. The trial court relied on Fed.R.Civ.P. 15(c) in relating the April 30, 1974, amendment back to the original complaint. Fed.R.Civ.P. 15(c) provides:

Whenever the claim or defense asserted in the amended pleading arose out of

---

* The Honorable William C. Stuart, United States District Judge for the Southern District of Iowa, sitting by designation.

1. The Honorable Fred J. Nichol, Chief Judge, United States District Court for the District of South Dakota.

the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

We do not believe the 1966 amendment to Rule 15(c) contemplated such an expansive approach to the relation back rule. It was primarily intended to alleviate harsh decisions which had defeated claims on technicalities that should have been decided on their merits. Private parties who had actions against some government agency were the principal victims. Proposed Rules of Civil Procedure, 39 F.R.D. 69, 82 (1966). Wright and Miller, Federal Practice and Procedure, Vol. 6, § 1498, at 506.

The original complaint was only an action for breach of contract against the corporation. Cunningham had signed the contract as executive vice-president. He was never made a party to that cause of action and had no personal responsibility. The June 4, 1973, amendment added a count of common law fraud against both him and S & F. We do not believe that the second requirement for bringing in a new party was met. There was no mistake in the identity of the proper party in the contract action. The amendment added a new cause of action in which Cunningham was a proper defendant. There was no reason for Cunningham to know from the contract action against the corporation that he would be named a defendant in a fraud action. The district court erred in holding the cause of action founded upon section 12(1) of The Act was not barred by the statute of limitations.

However, in view of our holding on the section 12(2) action, there is no change in the result.

### Section 12(2) Actions

If the common law fraud actions brought against Cunningham by John III's complaint and John Jr.'s amendment to his complaint filed June 4, 1973, are within the section 12(2) statute of limitations, the April 30, 1974, amendments alleging the security violations are clearly not barred under the first sentence of Fed.R.Civ.P. 15(c).

The statute of limitations relating to a section 12(2) violation provides that no action shall be maintained

> [u]nless brought within one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence.

The question here is when the Gridleys, in the exercise of reasonable diligence, should have discovered the untrue statements or omissions. This is a fact question for decision by the trial court. Defendant claims that the statute of limitations began running five days after the transaction was completed (April 19, 1972) because S & F did not make application to register the stock as required and the Gridleys also knew S & F had been losing money.

The trial court did not make a factual determination on this specific issue because defendant, at trial, argued that a prudent man would have discovered the fraud in late 72 or early 73 which would have been beyond the one year limitation for the amendment charging security violations, except for the relation back rule. Defendant does not argue here that the securities violation amendment should not relate back to the common law fraud count.

However, we will dispose of the argument advanced here on its merits. The failure to begin registration proceedings within five days as required was not sufficient to alert the ordinary reasonable prudent person to the fact that misleading and

omitted statements might have been made just five days before. Reasonably diligent inquiries were made concerning the failure to register and reassurances were received by letter as late as July 1972. The Gridleys knew S & F was not in the best financial condition, but they were depending on the contemplated merger to make their investment in S & F profitable. The court believes that the earliest possible time that the Gridleys, with due diligence, should have discovered the false and misleading statements was in the late fall of 1972. The common law fraud action was filed the following June, well within a year thereafter.

The statute of limitations had not run on the Gridleys section 12(2) actions.

### Tender

■ Defendant claims that the failure of the Gridleys to tender back the securities until July 1975 bars recovery under section 12 of The Act. This defense was not raised below. "It is axiomatic that issues not raised below may not, in the absence of extraordinary circumstances, be raised on appeal." *Levitt v. United States,* 517 F.2d 1339, 1347 (8th Cir.1975).

However, we might comment that we do not consider the cases cited by defendant applicable to these facts. It would have been preferable if the securities had been tendered into court by the pleadings, but as no time for tender is prescribed by section 12, 15 U.S.C. 77*l*, a tender prior to or during trial satisfies the purpose for the tender. *Buchholtz v. Renard,* 188 F.Supp. 888, 892 (S.D.N.Y.1960); *Repass v. Rees,* 174 F.Supp. 898, 906 (D.Colo.1959).

Affirmed.