Frank P. ANTINORE, et al.

v.

ALEXANDER & ALEXANDER SERVIC-
ES, INC., Alexander & Alexander, Inc.
and Evanston Insurance Company.

Master Docket No. 4–82–874. Civil
Action 4–84–14.

United States District Court,
D. Minnesota,
Fourth Division.

Aug. 24, 1984.

See also, D.C., 597 F.Supp. 1361.

Lowell E. Sachnoff, Charles R. Watkins, Chicago, Ill., for plaintiffs.

John Labovitz, Washington, D.C., Jeanne Forneris, Minneapolis, Minn., for defendant Alexander & Alexander.

Theodore A. Boundas, Keith Hanson, Chicago, Ill., for defendant Evanston Ins. Co.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.[1]

This action arises from the Flight Transportation Corporation ("FTC") Securities Litigation pending before this court under Master Docket No. 4–82–874. Plaintiffs, purporting to be representatives of a class of all persons who purchased FTC securities during the period from November 30, 1979 to June 18, 1982,[2] bring this action

---

1. Judge Weiner, a district court judge in the Eastern District of Pennsylvania, is sitting by designation.

2. There are five purported subclasses. Subclass I consists of persons who purchased, directly or

in the aftermarket, common stock of FTC issued pursuant to a registration statement declared effective by the SEC on November 30, 1979; subclass II consists of persons who purchased, directly or in the aftermarket, common stock and/or warrants to purchase common stock of

against the defendants, Alexander & Alexander Services, Inc. and Alexander & Alexander, Inc. (collectively referred to as "A & A"), insurance brokerage corporations organized and existing under the laws of the State of Maryland. Plaintiffs allege that Ezell Jones ("Jones") was a corporate officer and key employee of A & A. They also allege that Jones was a member of FTC's board of directors between the fall of 1980 and June 1982. Plaintiffs assert that by June 1982, A & A was responsible for virtually all of FTC's insurance needs.

The complaint against A & A incorporates by reference the complaint brought against various defendants in *Antinore, et al. v. Flight Transportation Corporation, et al.*, 593 F.Supp. 612 ("Consolidated Complaint"). Plaintiffs allege that there were material misrepresentations, material omissions, and materially false and misleading information regarding the revenues, businesses, operations and financial condition of FTC in the 1979, 1981 and 1982 Prospectuses. They assert that the procurement and maintenance of FTC's insurance policies were essential to the allegedly fraudulent scheme to inflate the value of FTC securities described in the Consolidated Complaint. Plaintiffs allege that A & A knew or should have known of or was a member of or participant in this scheme or aided and abetted such activities. The particular facts are set forth in the complaint.

The eleven counts of the Consolidated Complaint are incorporated into the complaint against A & A as follows: Counts I–III allege claims pursuant to Section 11 of the Securities Act in connection with the November 30, 1979, March 2, 1981, and June 3 and 4, 1982 Registration Statements and Prospectuses; Count IV asserts an action pursuant to Section 10(b) of the Exchange Act for false and misleading disseminations; Counts V–VII allege violations of Section 12(2) of the Securities Act. Count VIII seeks to impose liability on the defendants as control persons pursuant to Sections 15 of the Securities Act and Section 20 of the Exchange Act; Count IX asserts common law fraud and reckless misrepresentations; Count X is brought pursuant to two sections of the Minnesota securities laws; and Count XI asserts liability under the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. §§ 1961–1968.

Presently before the court is the defendants' motion to dismiss the entire complaint. It contends that Counts I–III and Counts V–VII are barred by the statute of limitations. It contends that Counts I–VII should be dismissed for failure to state a claim of secondary liability. A & A further contends that Counts IV–VII and Count XI must be dismissed for failure to state with particularity the circumstances constituting A & A's purported fraud. Finally, the defendants assert that Count IX and X must be dismissed for lack of jurisdiction.

■ The standard governing a motion to dismiss has been stated by the Supreme Court as follows: "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). For the purposes of motion, the well-pleaded material allegations of the

FTC offered as units of securities of FTC, each unit consisting of one share of common stock of FTC and one half of a warrant to purchase one share of common stock of FTC, issued pursuant to a registration statement declared effective by the SEC on March 2, 1981; subclass III contains persons who purchased, directly or in the aftermarket, common stock of FTC issued pursuant to a registration statement declared effective on June 3, 1982; subclass IV consists of persons who purchased, directly or in the aftermarket, debentures and/or warrants to purchase common stock of FTC offered as units of securities of FTC, each unit consisting of a $1,000 principal amount 11¼ Sinking Fund Debenture due June 1, 1995, and warrants to purchase 57 shares of FTC common stock, issued pursuant to a registration statement declared effective by the SEC on June 4, 1982; subclass V consists of persons who purchased FTC securities but who are not included in any of Subclasses I, II, III or IV. (Complaint, ¶ 27.) They all claim to have suffered a loss from their purchases.

complaint are taken as admitted. 2A Moore's Federal Practice ¶ 12.08 (1983).

## STATUTE OF LIMITATIONS

■ Section 13 sets forth the limitation period for Section 11 and Section 12(2) as follows:

No action shall be maintained to enforce any liability created under section 11 or 12(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence.... In no event shall any such action be brought to enforce a liability created under section 11 ... of this title more than three years after the security was bona fide offered to the public, or under Section 12(2) of this title more than three years after the sale.

15 U.S.C. § 77m. The three year period provided in Section 13 is an absolute limitation. *Engl v. Berg*, 511 F.Supp. 1146, 1150 (E.D.Pa.1981); *Turner v. First Wisconsin Mortg. Trust*, 454 F.Supp. 899, 911 (E.D. Wis.1978). Thus, claims brought more than three years after the date of an offer (for the purposes of Section 11 claims) or the date of a sale (for the purposes of Section 12(2) claims) are time barred. In the case *sub judice*, only the claims brought pursuant to the November 30, 1979 offering are beyond the three year limitation period. The plaintiffs argue, however, that the complaint against A & A is, in effect, an amendment to the Consolidated Complaint. Thus, they contend that the complaint against A & A relates back to the October 1982 filing of the Consolidated Complaint and therefore renders claims brought pursuant to the November 1979 offer timely. We disagree.

The circumstances under which an amended pleading may relate back to the date of the original pleading are set forth in Rule 15(c) of the Federal Rules of Civil Procedure. Rule 15(c) provides, in pertinent part:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

A & A does not contend that the complaint against it does not arise out of the conduct set forth in the Consolidated Complaint or that it would be prejudiced in being required to maintain a defense on the merits. Rather, A & A contends that the plaintiffs were not operating under a mistake concerning the identity of the proper party. Plaintiffs, on the other hand, argue that relation back is proper because A & A knew or should have known from the inception of the FTC litigation that it could be joined as a party.

The Eighth Circuit has not taken an expansive approach to Rule 15(c). *Gridley v. Cunningham*, 550 F.2d 551 (8th Cir.1977). In *Gridley*, the court declined to permit a fraud action against a corporate officer to relate back to a contract action against the corporation with which he was employed because, "There was no mistake in the identity of the proper party in the contract action." 550 F.2d at 553. Similarly, in *Russ v. Ratliff*, 578 F.2d at 221 (8th Cir. 1978), the court refused to permit a civil rights complaint against Star City, Arkansas to relate back to a similar action against a police officer and the mayor and council of Star City because the plaintiffs were "represented by knowledgeable civil rights attorneys" who "chose as defendants persons whom they thought were

proper parties and who were proper parties." 578 F.2d at 224.

■ In the case *sub judice,* the plaintiffs do not contend that they brought the Consolidated Complaint against the wrong parties. Accordingly, we decline to permit the complaint against A & A to relate back to the date when the Consolidated Complaint was filed. Therefore, the plaintiffs' Section 11 claims in connection with the November 1979 offering must be dismissed. However, the plaintiffs' Section 12(2) claims in connection with this offering cannot be dismissed. Unlike the three year limitation period for Section 11 which runs from the date of offering, the three year period for Section 12(2) runs from the date of sale. Since this court has no evidence before it as to when the plaintiffs purchased the securities issued pursuant to the 1979 offering, we cannot dismiss the Section 12(2) claims as time barred.

With respect to each of the plaintiffs' Section 11 and 12(2) claims, however, A & A argues that they have been brought beyond the one year limitations period of Section 13 which requires actions to be brought "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. A & A argues that, "By October 1982, [the date the Consolidated Complaint was filed] plaintiffs were obviously aware of Jones' alleged violations and of Jones' relationship to A & A. Thus, as early as October 1982, plaintiffs were on 'inquiry notice' of a potential claim against A & A." [Memorandum in Support of A & A's Motion to Dismiss at p. 8]. Since the complaint was not filed until January 10, 1984, A & A asserts that it was brought more than one year beyond the plaintiffs' inquiry notice. Plaintiffs, on the other hand, assert that they did not learn of A & A's role in the allegedly fraudulent scheme until the summer of 1983, thereby rendering the filing of this complaint timely. [Memorandum of Plaintiffs in Opposition to A & A's Motion to Dismiss at p. 2].

■ Resolution of this issue on the pleadings is inappropriate. Whether the plaintiffs have exercised reasonable diligence "is a fact question for decision by the trial court." *Gridley v. Cunningham, supra,* 550 F.2d at 553. Accordingly, the court must await evidence regarding this matter.

The defendants next contend that the Section 11 and 12(2) claims must be dismissed for failure to plead compliance with the limitations requirements of Section 13. In *Hagert v. Glickman, Lurie, Eiger & Co.,* 520 F.Supp. 1028 (D.Minn.1981), this court held that a bare allegation of compliance with the limitation period is insufficient. Rather, "a plaintiff must affirmatively plead facts indicating that the action has been timely brought." 520 F.Supp. at 1033 (citation omitted).

■ In a matter also arising out of the FTC Securities Litigation, we recently rejected the argument of the law firm to FTC that the Section 11 claims brought against it should be dismissed for failure to plead the limitations requirements. *Antinore v. Opperman & Paquin,* Civ.No. 4–83–581, related to Master Docket No. 4–82–874, slip op. at 6–7 (D.Minn. August 1, 1984). This decision was based upon the plaintiffs' allegation that a temporary restraining order was entered against FTC on June 18, 1982 and their assertion that this was the earliest date on which they could have discovered the alleged fraud. *Id.* In the case *sub judice,* however, neither the complaint against A & A nor the Consolidated Complaint recite any facts upon which the date of discovery of a claim against A & A could be based. Moreover, unlike the complaint against the law firm, none of the Section 11 (or Section 12(2)) counts contain even a bare allegation of compliance. However, in view of the liberal pleading requirements of the Federal Rules of Civil Procedure, dismissal of the complaint is not warranted. *See, In re Caesar's Palace Securities Litigation,* 360 F.Supp. 366, 378 (S.D.N.Y. 1973). Accordingly, the plaintiffs are given leave to amend the complaint to plead compliance with the limitations requirements of

Section 13 in connection with their claims for relief under Sections 11 and 12(2).

A & A next contends that the plaintiffs have failed to allege a proper basis of liability against it under Sections 11 and 12(2) of the Securities Act of 1933 and Section 10(b) of the 1934 Exchange Act. The plaintiffs do not assert primary liability against A & A under these sections. Rather, they contend that A & A is liable as: (1) an aider and abettor to the alleged primary violations of the defendants named in the Consolidated Complaint; (2) a control person pursuant to Section 15 of the Securities Act and Section 20 of the Exchange Act; and (3) a principal for the alleged wrongful acts of its agent, Ezell Jones.

### SECONDARY LIABILITY UNDER SECTIONS 11, 12(2) AND 10(b)

Section 11 of the Securities Act of 1933 sets out the following persons who may be liable where a registration statement contains an untrue statement of material fact or omits to state a material fact:

(1) every person who signed the registration statement;

(2) every person who was a director of (or person performing similar functions) or partner in the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted;

(3) every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, or partner;

(4) every accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, report, or valuation, which purports to have been prepared or certified by him;

(5) every underwriter with respect to such security. 15 U.S.C. § 77k(a).

Section 12(2) imposes liability on any person who "offers or sells a security" by means of a false or misleading prospectus or oral communication. 15 U.S.C. § 77(l)(2). A & A contends that aiding and abetting liability may not be asserted under Sections 11 and 12(2). We agree.

In the related matter of *Antinore v. Reavis & McGrath*, 593 F.Supp. 612, 616 (D.Minn.1984), after a review of developments in the case law, this court dismissed the plaintiffs' Section 11 claims based on an aiding and abetting theory of liability. We adopt the reasoning of that opinion in ruling on the plaintiffs' Section 11 claims in the case *sub judice*. Like Section 11, Section 12(2) is an express liability provision and we conclude that under the law of the Eighth Circuit, a Section 12(2) claim may not be brought on an aiding and abetting theory of liability. *See Hagert v. Glickman, Lurie, Eiger & Co., supra,* 520 F.Supp. at 1034. The plaintiffs' claim of control person liability under these Sections 11 and 12(2) is discussed *infra*.

A & A also contends that the plaintiffs have failed to state a claim for secondary liability under Section 10(b) and Rule 10b–5 promulgated thereunder. Section 10(b) provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. 15 U.S.C. § 78j(b).

Rule 10b–5 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any

facility of any national securities exchange,

(1) to employ any device, scheme, or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b–5.

 A three part test must be met before aiding and abetting liability may be imposed under Section 10(b). A plaintiff must prove:

(1) the existence of a securities law violation by the primary party (as opposed to the aiding and abetting party);

(2) "knowledge" of the violation on the part of the aider and abettor; and

(3) "substantial assistance" by the aider and abettor in the achievement of the primary violation. *Stokes v. Lokken*, 644 F.2d 779, 782–783 (8th Cir.1981); *See also IIT, An International Investment Trust v. Cornfeld*, 619 F.2d 909, 922 (2d Cir.1980); *Monsen v. Consolidated Dressed Beef Co.*, 579 F.2d 793, 799 (3d Cir.), *cert. denied,* 439 U.S. 930 [99 S.Ct. 318, 58 L.Ed.2d 323] (1978).

A & A contends that the plaintiffs have failed to allege the element of substantial assistance. The plaintiffs allege that:

Specifically, but not limited thereto, A & A and Jones knew or should have known of, or aided and abetted, or were involved in, engineered, participated in or were responsible for, a scheme pursuant to which William Rubin, Janet Karki and FTC insured aircraft for artificially high values and then used such insured values to obtain inflated credit or loans based on such values. These acts contributed substantially to the artificial inflation of FTC's securities prices and to the perpetration of the overall fraudulent scheme as detailed in Exhibit A [the Consolidated Complaint] and resulted in FTC obtaining the use of funds which it otherwise would have been unable to obtain. Complaint ¶ 21.

This assertion is sufficient to constitute an allegation of substantial assistance. While proof of this allegation will ultimately be required, dismissal of the plaintiffs' Section 10(b) claims at this stage is not warranted.

## CONTROL PERSON LIABILITY

A & A next contends that the plaintiffs have failed to allege the requisite elements of control person liability under Section 15 of the 1933 Act[3] and Section 20(a) of the 1934 Act.[4] In *Hagert v. Glickman, Lurie, Eiger & Co., supra,* the court set forth the requisites for asserting a claim of control person liability as follows:

While we agree that plaintiffs need not plead specific affirmative acts showing actual control of a particular defendant over an alleged principal violator, it is necessary that, at the least, defendants

---

**3.** Section 15 provides:

Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 11 or 12 of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist. 15 U.S.C. § 77*o.*

**4.** Section 20(a) provides:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

Sections 15 and 20(a) have been interpreted in the same manner. *See Pharo v. Smith,* 621 F.2d 656, 673 (5th Cir.1980).

be informed whether they are alleged to be primary or secondary violators, as to which primary violator they are allegedly controlling persons and whether they are controlling persons as a result of status or affirmative acts. (citations omitted). 520 F.Supp. at 1035. The plaintiffs' complaint against A & A meets these requirements. The complaint names A & A as a secondary violator, Complaint ¶ 24; it identifies the primary violator it allegedly controlled, *Id.*; and the relationship upon which control liability is based. Complaint ¶¶ 13–16.

▬ A & A asserts, however, that an allegation of "culpable participation" by the controlling entity in the wrongdoing of the primary violator is also required to state a claim of control person liability. A & A has cited no Eighth Circuit authority dispositive of this issue. Assuming, *arguendo,* that an allegation of culpable participation is required, the complaint contains such an allegation. Complaint ¶ 21.[5] Thus, while the plaintiffs' Section 11 and 12(2) claims have been dismissed to the extent that they allege secondary liability, the claims brought under these sections may remain viable on a control person theory of liability.[6]

### PLEADING WITH PARTICULARITY

▬ A & A seeks dismissal of Counts IV–VII and Count XI for failure to allege fraud with sufficient particularity. To satisfy Rule 9(b) of the Federal Rules of Civil Procedure, which requires that in averments of fraud, the circumstances be stated with particularity, "conclusory allegations that defendant's conduct was fraudulent and deceptive are not enough." *Decker v. Massey-Ferguson, Inc.,* 681 F.2d 111, 114 (2d Cir.1982) (citing *Segal v. Gordon,* 467 F.2d 602, 607 (2d Cir.1972)). All that is required is that plaintiffs set forth the "time, place and circumstances of the al-

leged fraudulent activities." *Hagert v. Glickman, Lurie, Eiger & Co.,* 520 F.Supp. at 1036 (citing *Helfant v. Louisiana & Southern Life Ins. Co.,* 82 F.R.D. 53, 57 (E.D.N.Y.1979)).

▬ The complaint against A & A satisfies the requirements of rule 9(b). A & A has been given sufficient notice of the claim made against it insofar as the complaint alleges that it participated in a scheme to insure aircraft at artificially high values which contributed to the artificial inflation of FTC's securities prices. Complaint ¶ 21. The complaint states the relevant time period in which this activity occurred, Complaint ¶¶ 13–14, and the circumstances of the alleged fraud. Complaint ¶¶ 13–18, 20–21. Dismissal is not warranted on the basis of Rule 9(b).

### LACK OF JURISDICTION

A & A contends that Counts IX and X of the Consolidated Complaint, alleging pendent state securities law and common law fraud claims should be dismissed for lack of jurisdiction if the federal claims are dismissed. Since the federal claims have not been dismissed, the pendent state law claims are properly before this court.

### ORDER

The motion of the defendants, Alexander & Alexander Services, Inc. and Alexander & Alexander, Inc. to dismiss plaintiffs' complaint is GRANTED in part.

It is hereby ORDERED that Count I of the Consolidated Complaint is DISMISSED as to A & A.

It is FURTHER ORDERED that the plaintiffs have thirty (30) days from the date of the filing of this order to amend the complaint against A & A to plead compliance with the limitations requirements of

---

5. See p. 1359, *supra.*

6. Because we have determined that the complaint states a claim for secondary liability under Section 10(b) and control person liability under Sections 11, 12(2), and 10(b), we do not

reach the issue of whether the plaintiffs' assertion of liability under these sections pursuant to the principles of respondeat superior requires dismissal.

Section 13 in connection with their claims for relief under Sections 11 and 12(2).

IT IS SO ORDERED.

---

1. Judge Weiner, a district court judge in the Eastern District of Pennsylvania, is sitting by designation.

2. There are five purported subclasses. Subclass I consists of persons who purchased, directly or in the aftermarket, common stock of FTC issued pursuant to a registration statement declared effective by the SEC on November 30, 1979; subclass II consists of persons who purchased, directly or in the aftermarket, common stock and/or warrants to purchase common stock of FTC offered as units of securities of FTC, each unit consisting of one share of common stock of FTC and one half of a warrant to purchase one share of common stock of FTC, issued pursuant

to a registration statement declared effective by the SEC on March 2, 1981; subclass III contains persons who purchased, directly or in the aftermarket, common stock of FTC issued pursuant to a registration statement declared effective on June 3, 1982; subclass IV consists of persons who purchased, directly or in the aftermarket, debentures and/or warrants to purchase common stock of FTC offered as units of securities of FTC, each unit consisting of a $1,000 principal amount 11¼% Sinking Fund Debenture due June 1, 1995, and warrants to purchase 57 shares of FTC common stock, issued pursuant to a registration statement declared effective by the SEC on June 4, 1982; subclass V consists of