[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12222

_____

D.C. Docket No. 1:19-cv-02125-CAP


KENNETH FEDANCE, et al.,

Plaintiffs-Appellants,

versus

CLIFFORD "T.I." JOSEPH HARRIS, JR.,
RYAN FELTON,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 21, 2021)

Before WILLIAM PRYOR, Chief Judge, LUCK, Circuit Judge, and MARKS,[*]
District Judge.

WILLIAM PRYOR, Chief Judge:

---

[*] Honorable Emily Coody Marks, Chief United States District Judge for the Middle
District of Alabama, sitting by designation.

This appeal is about an initial coin offering of cryptographic tokens promoted by celebrities to fund a new movie-streaming platform. The platform never launched, and the value of the tokens plummeted a few months after the offering. After the limitations period had run, a purchaser, Kenneth Fedance, brought a putative class action for the sale of unregistered securities against Ryan Felton and Clifford "T.I." Joseph Harris Jr., the purported co-owners of the company that issued the tokens. Fedance asserted that fraudulent concealment equitably tolled the limitations period, but the district court dismissed the complaint as untimely. We affirm.

## I. BACKGROUND

In mid-2017, Ryan Felton created FLiKIO, an "offshore entity" also known as FLiK. FLiK represented that it was "developing [an] online viewing platform that [would] allow[] creatives to sell / rent their projects." It purported that it also planned to fund "unique and creative entertainment projects." To raise funds, FLiK created cryptographic tokens called "FLiK Tokens." FLiK represented that investors could redeem the tokens on its platform after it launched. FLiK never registered FLiK Tokens as securities with the Securities and Exchange Commission.

In August 2017, Felton began to promote FLiK. He created social media accounts for FLiK on Twitter, Facebook, and other platforms. Through these social

2

media accounts, FLiK announced that it planned to launch an initial coin offering of FLiK Tokens on August 20. It published a whitepaper on August 12 that provided details about the company and its plans. FLiK explained that it would use the funds from its sale of FLiK Tokens to license content, fund film projects, market and promote the FLiK platform, and integrate FLiK with additional viewing platforms.

A few days later, FLiK announced on social media that "T.I.," an Atlanta-based rapper and actor named Clifford Joseph Harris Jr., had joined Felton as a co-owner of FLiK. FLiK represented that its leadership included Felton as its "Founder" and Harris as its "Co-Owner." The actor Kevin Hart later tweeted a photograph of himself with Harris and wrote, "I'm Super Excited for [T.I.] and his new venture with @TheFlikIO! They're gonna crush it! #ICO #blockchain #crypto #bitcoin." On Facebook, Hart joked that the photograph portrayed his "tellin [T.I.] how much help he gon need spending all that money he gonna make on his new venture."

On August 20, FLiK launched the initial coin offering of FLiK Tokens and sold the tokens for about six cents each. Meanwhile, Felton continued to portray FLiK as a promising company with major investments and deals. And Harris promoted the initial coin offering to his more than eight million followers on

3

Twitter by tweeting, "Check out my new #ICO @TheFlikIO it's about to change #Hollywood!!! #Crowdsale #Blockchain."

The value of FLiK tokens would soon soar and then come crashing down. FLiK closed the initial coin offering on September 20. On October 17, FLiK Tokens reached their peak price of about 35 cents each on a cryptocurrency exchange market. The following day, Felton posted that FLiK Tokens "will be redeemable for $3.99 in 3 months, $9.99 in 12 months and $14.99 in 15 months." He also represented that FLiK was a "growing multi-billion dollar company" that was making film investments. That month, FLiK, Felton, and Harris continued to make announcements and insinuations about FLiK's projects and purported investors. But in late 2017, a "massive 'dump'" of the tokens occurred, and they began to lose value rapidly. FLiK then stopped posting on social media and Felton largely ignored messages from token purchasers. The value of the tokens would climb again until mid-February 2018, but up to only 18 cents each.

FLiK did not, in the end, change Hollywood. On April 3, 2018, in what would be its final tweet, FLiK announced that it had "missed [its] deadline" to launch its streaming service. None of its services or projects came to fruition and its website was eventually deleted. By August 3, FLiK Tokens were worth less than one cent a token. On August 29, FLiK announced that it had been acquired by Skyblock Media Group, LLC, a company created the previous day. Felton told

4

token purchasers that Skyblock would not be run by the same people involved in FLiK.

Kenneth Fedance purchased $3,000 worth of FLiK Tokens on August 23, 2017. On May 10, 2019, Fedance, individually and on behalf of a putative class of persons who purchased FLiK Tokens during the initial coin offering, sued Felton and Harris for securities violations. The complaint asserted three counts: two counts under section 12(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77*l*(a)(1), and one under section 15(a) of the Act, *id.* § 77o(a). It alleged that Felton and Harris sold unregistered securities in violation of section 5(a) and (c) of the Act, *id.* § 77e(a), (c), that Harris acted as a "statutory seller" of unregistered securities, and that Felton and Harris were liable as controlling persons of an entity, FLiK, that engaged in the sale of unregistered securities.

Anticipating a defense that the claims were untimely, Fedance asserted that he could not "Bring Em Out" earlier. *See* T.I., *Bring Em Out*, *on* Urban Legend (Atlantic Records & Grand Hustle Records 2004). He alleged that he was "unaware" that FLiK Tokens were securities subject to regulation until April 25, 2019, when the district court issued a ruling in a similar lawsuit. *See Beranger v. Harris*, 2019 WL 5485128, at *4 (N.D. Ga. Apr. 24, 2019). He asserted that Felton "fraudulently concealed the true nature of FLiK [Tokens]." According to Fedance, he was "unaware of any facts giving rise to this action" because of "Felton's

5

fraudulent misstatements and omissions promising that FLiK [Tokens] had actual utility" and were not securities. And he alleged that the misrepresentations continued through August 2018, with the alleged acquisition of FLiK by SkyBlock, so he could not "have possibly known sufficient facts to bring this action until September 2018, at the very earliest."

Harris moved the district court to dismiss the complaint against him as untimely. The district court said, in effect, "Live Your Life," and granted the motion. *See* T.I. featuring Rihanna, *Live Your Life*, *on* Paper Trail (Atlantic Records & Grand Hustle Records 2008). The district court concluded that the statute of limitations was not subject to either a discovery rule or equitable tolling. In response to an order to show cause, Fedance agreed with the district court that the same question of law controlled whether the claims against Felton were timely. So the district court dismissed the claims against Felton too.

## II. STANDARDS OF REVIEW

"We review *de novo* the district court's dismissal of [a claim] for failure to satisfy the applicable statute of limitations, taking as true all factual allegations contained on the face of the complaint." *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 159 (11th Cir. 1992). We also review *de novo* questions of statutory interpretation. *United States v. Hastie*, 854 F.3d 1298, 1301 (11th Cir. 2017).

6

## III. DISCUSSION

We divide our discussion in two parts. We first explain that the district court erred by concluding that the text of the statute of limitations for section 12(a)(1) and section 15(a) claims forecloses equitable tolling. We next determine that the complaint does not plausibly allege that Felton or Harris fraudulently concealed the facts necessary to assert claims under sections 12(a)(1) or 15(a) against them. Because we affirm the dismissal of the complaint as untimely, we do not reach Harris's alternative arguments for affirmance, or Felton's attempt to adopt them.

### A. The Text of the Statute of Limitations for Section 12(a)(1) and Section 15(a) Claims Does Not Foreclose Equitable Tolling.

When it interpreted the applicable statute of limitations, the district court made the "all-too-common mistake" of conflating the doctrine of fraudulent concealment, an equitable-tolling doctrine, with the discovery rule. *SEC v. Gabelli*, 653 F.3d 49, 59 (2d Cir. 2011), *rev'd on other grounds*, 568 U.S. 442 (2013). That statute of limitations, 15 U.S.C. § 77m, includes a discovery rule for some claims, but not for section 12(a)(1) and section 15(a) claims. But the text of the statute does not foreclose equitable tolling.

Non-jurisdictional statutory time bars come in two forms: statutes of limitations and statutes of repose. "Both are mechanisms used to limit the temporal extent or duration of liability for [certain] acts, but each has a distinct purpose," *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049 (2017) (internal

quotation marks omitted), and different rules regarding the availability of equitable tolling.

Statutes of limitations, which encourage plaintiffs to pursue claims diligently, *id.*, "are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute," *Young v. United States*, 535 U.S. 43, 49 (2002) (citations and internal quotation marks omitted). "We therefore presume that equitable tolling applies if the period in question is a statute of limitations[.]" *Lozano v. Montoya Alvarez*, 572 U.S. 1, 11 (2014). Equitable tolling "pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Id.* at 10.

In contrast, statutes of repose protect defendants from prolonged exposure to liability. *CTS Corp. v. Waldburger*, 573 U.S. 1, 9 (2014). Statutes of repose may not be tolled, "even in cases of extraordinary circumstances beyond a plaintiff's control." *Id.* In other words, statutes of repose show "No Mercy" to plaintiffs. *See* T.I. featuring The-Dream, *No Mercy*, on No Mercy (Atlantic Records & Grand Hustle Records 2010).

Fedance alleged claims under section 12(a)(1) and section 15(a) of the Securities Act of 1933. 15 U.S.C. §§ 77*l*(a)(1), 77o(a). Section 12(a)(1) creates a private right of action for purchasers of a security against any person who offers or

sells the security in violation of section 5 of the Act. *Id.* § 77*l*(a)(1). Section 5 in turn prohibits any person from offering, selling, or delivering securities without a registration statement in effect, *id.* § 77e(a), or without filing a registration statement, *id.* § 77e(c). And section 15(a) imposes joint and several liability on a person who controls an entity liable under section 12(a)(1), *id.* § 77o(a), so an action brought under it is subject to the same constraints as a section 12(a)(1) action.

Section 13 of the Act, *id.* § 77m, governs the timeliness of claims brought under section 12(a)(1) and operates in two parts, *Cal. Pub.*, 137 S. Ct. at 2049. First, it creates a one-year limitations period for three kinds of actions and a rule of accrual for each action:

> No action shall be maintained to enforce any liability created under section [11] or [12](a)(2) of this [Act] unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section [12](a)(1) of this [Act], unless brought within one year after the violation upon which it is based.

15 U.S.C. § 77m. Second, it creates a three-year period of repose for the three kinds of actions, and it establishes a rule of commencement for that period as well:

> In no event shall any such action be brought to enforce a liability created under section [11] or [12](a)(1) of this [Act] more than three years after the security was bona fide offered to the public, or under section [12](a)(2) of this [Act] more than three years after the sale.

*Id.*; *see Cal. Pub.*, 137 S. Ct. at 2049 (considering the timeliness of a section 11 claim). The Supreme Court has explained that the three-year bar is a statute of repose because the "clear terms" of section 13 state "that '*in no event*' shall [a section 11] action be brought more than three years after the securities offering on which it is based." *Cal. Pub.*, 137 S. Ct. at 2049 (alteration adopted) (emphasis added).

The one-year bar on claims under section 12(a)(1) is a statute of limitations. Nothing in the text of section 13 makes equitable tolling inconsistent with that statute. So we presume that equitable tolling is available. *Lozano*, 572 U.S. at 11.

Fedance argues that fraudulent concealment tolled the statute of limitations for his complaint, which he filed in May 2019, well over one year after he purchased FLiK Tokens in August 2017. Fraudulent concealment occurs when a defendant makes affirmative acts or misrepresentations "which are calculated to, and in fact do, prevent the discovery of the cause of action." *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 701 (11th Cir. 2005) (internal quotation marks omitted). It is one possible basis for equitable tolling. *See id.*

The district court concluded that, because the text of the statute of limitations for claims under section 12(a)(1) establishes a certain date of accrual that does not depend on the discovery of the underlying violation, equitable tolling is inapplicable. The Sixth Circuit too has held that because "Congress expressly

10

mentioned a discovery rule for [section] 12(a)(2) claims but not for [section] 12(a)(1)," it "intended to negate equitable tolling in this context." *Nolfi v. Ohio Ky. Oil Corp.*, 675 F.3d 538, 553 (6th Cir. 2012). We disagree.

"We must distinguish between the *accrual* of [a] plaintiff's claim and the *tolling* of the statute of limitations[.]" *Holland v. Florida*, 560 U.S. 631, 647 (2010) (alteration adopted) (internal quotation marks omitted). Fraudulent concealment "is an equitable tolling doctrine, not an accrual doctrine." *Gabelli*, 653 F.3d at 59. And the discovery rule is a rule of accrual. *Id.*

The discovery rule is distinct from the equitable-tolling doctrine, *Rotkiske v. Klemm*, 140 S. Ct. 355, 361 (2019), although "[t]he two doctrines are often blended or confused," *id.* at 363 n.* (Ginsburg, J., dissenting in part and dissenting from the judgment). Ordinarily, a statute of limitations begins to run "when the cause of action accrues because Congress legislates against the standard rule that the limitations period commences when the plaintiff has a complete and present cause of action." *Id.* at 360 (majority opinion) (alteration adopted) (internal quotation marks omitted). But when a discovery rule applies, "accrual is delayed until the plaintiff has 'discovered' his cause of action." *Gabelli*, 568 U.S. at 449 (internal quotation marks omitted); *cf. Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) ("Tolling doctrines stop the statute of limitations from running even if the accrual date has passed."). Courts have historically applied the

11

discovery rule, as an equitable exception to the standard accrual rule, in actions that sound in fraud. *Gabelli*, 568 U.S. at 449; *see Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 348 (1874). And sometimes, Congress creates a statutory discovery rule, *Rotkiske*, 140 S. Ct. at 361, as it did for the section 11 and section 12(a)(2) claims, *see* 15 U.S.C. § 77m.

Fraudulent concealment works differently than the discovery rule. Like any other basis for equitable tolling, it is not limited to actions that sound in fraud. *Prather v. Neva Paperbacks, Inc.*, 446 F.2d 338, 341 n.2 (5th Cir. 1971). And where the discovery rule automatically delays accrual of a fraud claim until a victim discovers he has been defrauded, *Gabelli*, 568 U.S. at 449, fraudulent concealment tolls the statute of limitations where a defendant acts "above and beyond the wrongdoing upon which the plaintiff's claim is founded" to keep a plaintiff from suing in time, *Cada*, 920 F.2d at 451; *see also Gabelli*, 653 F.3d at 59 ("Under the fraudulent concealment doctrine, even when a claim has already accrued, a plaintiff may benefit from equitable tolling in the event that the defendant took specific steps to conceal her activities from the plaintiff.").

No discovery rule applies to claims brought under section 12(a)(1). This kind of claim does not sound in fraud. And section 13 does not provide a discovery rule for claims under section 12(a)(1). *Cf. Rotkiske*, 140 S. Ct. 360–61. So the "Countdown" on the statute of limitations for a claim under section 12(a)(1) begins

12

on the date of the section 5 violation. *See* T.I., *Countdown, on* Urban Legend; *see also Cook v. Avien, Inc.*, 573 F.2d 685, 691 (1st Cir. 1978); *Gridley v. Cunningham*, 550 F.2d 551, 552 (8th Cir. 1977).

The lack of a discovery rule for claims brought under section 12(a)(1) does not "negate equitable tolling." *Contra Nolfi*, 675 F.3d at 553. "The [negative-implication canon] properly applies only when . . . the thing specified[] can reasonably be thought to be an expression of *all* that shares in the grant or prohibition involved." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 10, at 107 (2012) (explaining that a sign outside a restaurant that reads "No dogs allowed" does not imply that other animals *are* allowed in the restaurant). The expression of a rule of accrual for one kind of claim does not imply anything about the tolling of a limitations period for another kind of claim. So the provision of a discovery rule for claims under section 11 and section 12(a)(2) does not imply that equitable tolling of the statute of limitations for claims under section 12(a)(1) is unavailable. The district court erred by concluding otherwise.

The district court also relied on our reasoning in *Hill v. Texaco, Inc.*, 825 F.2d 333 (11th Cir. 1987), to decide that equitable tolling is unavailable, but later Supreme Court decisions have undermined that reasoning. In *Hill*, we concluded that equitable tolling did not apply to a limitations period, 15 U.S.C. § 2805(a), that

13

was "extremely short" and ran from an "exact starting point" instead of running from discovery. *Id.* at 334–35. The district court concluded that the limitations period for section 12(a)(1) claims satisfied the same criteria identified in *Hill*. But a decade after *Hill*, the Supreme Court held that the *opposite traits*—a discovery rule and a generous limitations period—rendered a statute *inconsistent* with equitable tolling. *United States v. Beggerly*, 524 U.S. 38, 48–49 (1998). Taken together, *Hill* and *Beggerly* would mean both that statutes with fixed starting points and short limitations periods *and* statutes with discovery rules and long limitations periods would not be subject to equitable tolling. But that broad exclusion of equitable tolling is inconsistent with the repeated statements by the Supreme Court "that a nonjurisdictional federal statute of limitations is normally subject to a rebuttable presumption in *favor* of equitable tolling." *Holland*, 560 U.S. at 645–46 (internal quotation marks omitted).

We decline to extend our reasoning in *Hill* to this statute of limitations. We have never applied *Hill* to hold that another statute is inconsistent with equitable tolling. *Cf. Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 707–08 (11th Cir. 1998) (distinguishing *Hill* and stating that *Hill* "represents a narrow exception to the general rule"). As the concurring opinion in *Hill* pointed out, without clear congressional guidance to the contrary—such as language providing that "'in no event' can [a date] be surmounted"—we must presume that equitable tolling

14

principles apply. *Hill*, 825 F.2d at 336 (Morgan, J., concurring specially) (internal quotation marks omitted). We do not disturb that presumption here.

### B. Fedance Did Not Plausibly Allege that Felton or Harris Fraudulently Concealed Viable Claims Under Sections 12(a)(1) or 15(a) during the Limitations Period.

Because it concluded that equitable tolling was textually foreclosed, the district court did not consider whether Fedance plausibly alleged that fraudulent concealment prevented him from bringing claims under sections 12(a)(1) or 15(a) within one year of the alleged section 5 violations. He did not, so we affirm the dismissal of the complaint on that ground. *See Powers v. United States*, 996 F.2d 1121, 1123–24 (11th Cir. 1993) (explaining that we may affirm a judgment for any reason supported by the record).

For fraudulent concealment to toll the statute of limitations, a plaintiff "must show both successful concealment of the cause of action and fraudulent means to achieve that concealment." *Prather*, 446 F.2d at 341. The defendant must have actively concealed facts such that the plaintiff remained "ignoran[t] of a potential claim," not "merely ignoran[t] of evidence." *Id.* And, as with all grounds for equitable tolling, the plaintiff must show that he "has pursued his rights diligently." *Lozano*, 572 U.S. at 10; *see also Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012) ("[W]hen a limitations period is tolled because of fraudulent

15

concealment of facts, the tolling ceases when those facts are, or should have been, discovered by the plaintiff."). Fedance cannot satisfy this burden.

In conclusory fashion, Fedance alleges that neither he nor putative class members could bring claims for the sale of unregistered securities within the one-year limitations period because Felton and Harris fraudulently concealed the facts necessary to reach the legal conclusion that FLiK Tokens were securities. But you cannot make fraudulent concealment mean "Whatever You Like." *See* T.I., *Whatever You Like*, *on* Paper Trail. The factual allegations of Fedance's complaint make it implausible that any token purchaser was unaware of possible claims under sections 12(a)(1) or 15(a) against the purported co-owners of FLiK as soon as they bought the tokens in August and September 2017.

Fedance's assertion of fraudulent concealment rests entirely on his supposed inability to "gather the intentionally concealed facts that the tokens were a scam with no utility" and determine that they were securities before the limitations period elapsed. He says that Felton and Harris concealed these facts by "repeat[ing] the sham wonders of FLiK Tokens including their utility." But Fedance misunderstands the test to determine whether something is a security subject to federal securities laws and regulations.

The Securities Act of 1933 defines a "security" to include many things, including an "investment contract." 15 U.S.C. § 77b(a)(1). Courts have interpreted

16

"investment contract" broadly to encompass many money-raising schemes. Thomas Lee Hazen, 1 *Treatise on the Law of Securities Regulation* §§ 1:49–50, at 116–19, 124 (7th ed. 2016). The basic test for distinguishing an "investment contract" from other commercial dealings is "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *SEC v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946). "If that test [is] satisfied, it is immaterial whether the enterprise is speculative or non-speculative or whether there is a sale of property with or without intrinsic value." *Id.* We have "divided the *Howey* test into the three elements: (1) an investment of money, (2) a common enterprise, and (3) the expectation of profits to be derived solely from the efforts of others." *SEC v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 (11th Cir. 1999) (internal quotation marks omitted).

To determine whether a transaction satisfies the "expectation of profits" element, the Supreme Court has instructed us to examine if an investor "is attracted solely by the prospects of a return on his investment," as opposed to when "a purchaser is motivated by a desire to use or consume the item purchased." *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 852–53 (1975) (internal quotation marks omitted). We look at both the motivations of the purchasers and the promotional materials associated with the offer and sale at issue. *Rice v. Branigar Org., Inc.*, 922 F.2d 788, 790 (11th Cir. 1991) (Powell, J.). Courts "examine the

17

substance—the economic realities of the transaction—rather than the names that may have been employed by the parties." *United Hous. Found.*, 421 U.S. at 851–52.

Felton and Harris allegedly fooled Fedance and other token purchasers into thinking that FLiK would be wildly successful, but they did not fool those purchasers into thinking that they were buying FLiK Tokens as anything but an investment. Indeed, Fedance alleged that Felton and Harris "touted, and [he and the putative class plaintiffs] *reasonably expected*, that the FLiK Tokens received . . . *would increase in value*." These purchases were all "About the Money." *See* T.I. featuring Young Thug, *About the Money*, on Paperwork (Grand Hustle Records & Columbia Records 2014).

All the facts that Fedance alleged regarding the nature of FLiK Tokens—to prove that their sale satisfied the *Howey* test—were available to any token purchaser before, during, or soon after the initial coin offering. Fedance readily admitted that "by their very nature, [cryptographic] tokens sold before a network launch are securities, because investors purchasing those tokens . . . rely[] primarily on the technical and managerial efforts of others to affect the failure or success of the enterprise." FLiK had not launched its viewing platform at the time of the initial coin offering. In its whitepaper, FLiK stated that it would use the funds raised from the initial coin offering to develop the company and implement

18

its platform. And FLiK and its purported co-owners promoted the tokens for their profit potential. Consider that soon after the initial coin offering, Felton posted that the value of the tokens would increase to almost $15 within 15 months, which he said "represent[ed] TREMENDOUS growth."

True, FLiK and its purported co-owners might have tried to obscure that FLiK Tokens purchased during the initial coin offering could be considered securities. The whitepaper never explicitly stated that FLiK Tokens were not securities, but it did say that the FLiK Token was "a cryptographic token used by the FLiK application" and that FLiK Tokens would "allow token holders to rent or purchase projects" and "grant token holders access to premium features and subscriptions." Nevertheless, any supposed *future* utility of the tokens on FLiK's "end-to-end entertainment ecosystem" is beside the point. Plenty of items that can be consumed or used—from cosmetics to boats to Scotch whisky—have been the subject of transactions determined to be securities because they had the attributes of an investment. *See* Hazen, 1 *Law of Securities Regulation* § 1:49, at 116–19 (listing examples).

Fedance alleged that he and the putative class could not have brought the claims until at least September 2018, but he identified no concealed facts necessary to bring the claims that came to light at that point. *Cf. Summerhill v. Terminix, Inc.*, 637 F.3d 877, 881 (8th Cir. 2011) ("If the plaintiff made any particular discovery,

19

it should be stated when it was made, what it was, how it was made, and why it was not made sooner[.] . . . One may not avoid the effect of the statute of limitations on the ground of fraudulent concealment if he . . . fails to plead . . .  when he . . . discovered the alleged fraud." (internal quotation marks omitted)). According to the complaint, Felton's fraudulent concealment continued through the end of August 2018 with the suspicious acquisition of FLiK by SkyBlock. Perhaps Felton managed to continue the illusion that the FLiK platform would someday launch until then. But those misrepresentations have no bearing on whether Fedance and the putative class were prevented from realizing that they had *invested* in FLiK Tokens in August and September 2017. Anyone in Fedance's position could say "You Know What It Is." *See* T.I. featuring Wyclef Jean, *You Know What It Is*, *on* T.I. vs. T.I.P. (Grand Hustle Records et al. 2007).

Fedance also alleged that he was "unaware" that FLiK Tokens were sold as securities until April 2019, when the district court ruled that similar allegations were sufficient to prove that they were. *See Beranger*, 2019 WL 5485128, at *4. But Fedance had all the facts he needed to make that same legal conclusion well before then. Because any misrepresentations on the part of Felton or Harris did not make Fedance or any putative class members "ignoran[t] of a potential [section 12(a)(1) or section 15(a)] claim," *Prather*, 446 F.2d at 341, equitable tolling does not excuse the untimeliness of Fedance's complaint.

20

## IV. CONCLUSION

We **AFFIRM** the dismissal of Fedance's complaint.