[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13089

Non-Argument Calendar

_____

DOLORES ROSE PEERS,

Plaintiff-Appellant,

*versus*

JAMES MARTIN BROWN,
Esquire,
ASHLEY M. AULLS,
Esquire,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:20-cv-01619-MSS-AEP

_____

Before WILSON, ANDERSON, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Dolores Rose Peers, proceeding *pro se*, appeals the district court's order dismissing her amended complaint with prejudice. In the district court, Peers asserted that Defendants, James Martin Brown and Ashley M. Aulls, committed professional negligence and crimes against humanity during their legal representation of her former spouse. After careful review, we affirm.

## BACKGROUND

### I.    Factual Background[1]

Defendants provided legal representation to Peers's former spouse, Harold Scism, between March 2007 and December 2008, defending him against criminal charges for allegedly sexually abusing his nieces. Peers paid $20,000 to Defendants for Scism's legal fees, and Peers notes that she "signed a contract in relation to Mr. Scism's case with the defendants." In a signed statement, Scism

---

[1] We accept the complaint's allegations as true and view them in the light most favorable to the plaintiff. *See Karantsalis v. City of Miami Springs*, 17 F.4th 1316, 1319 (11th Cir. 2021); *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).

declared that he asked Defendants to give Peers all authority and access to all information in his case. Scism was convicted of the crimes in 2009 and received a life sentence in prison.

In her complaint, Peers asserted that Defendants owed her a duty to represent Scism but breached that duty by failing to advocate zealously on Scism's behalf. She contended that Defendants failed to correct the dates during which Scism's alleged conduct occurred in his indictment, failed to seek important information about his niece's foster care history, and were otherwise hostile, cruel, inhumane, and abusive to her. Peers further asserted that Defendants ignored Scism for nearly two years by failing to perform investigative work or "push for the release of the [foster care] files," and instead aggressively pursued additional funds from Peers. Finally, Peers noted that Defendants never released Scism's client file, and that the statute of limitations should not commence until such release.

## II.    Procedural History

On August 25, 2020, Peers filed her amended complaint against Defendants in the Middle District of Florida, claiming diversity jurisdiction as a New York citizen against Defendants, both Florida citizens. Peers alleged professional negligence by Defendants and also asserted that they had committed crimes against humanity. Defendants each moved to dismiss Peers's amended complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), asserting a statute of limitations defense, along with a "lack of diversity jurisdiction, lack of standing and privity, . . . and failure to allege the elements

of negligence . . . ."  The district court determined that complete diversity existed in the matter, serving as a sufficient basis for subject matter jurisdiction.  The district court concluded, however, that Peers could not bring a claim of professional negligence against Defendants because she lacked privity of contract with them.  Further, the district court concluded that the two-year statute of limitations barred Peers's claims even if she could demonstrate contractual privity.  As such, the district court granted Defendant's motions and dismissed Peers's complaint with prejudice.  This timely appeal follows.

## STANDARD OF REVIEW

We review *de novo* a district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022).  "We also review *de novo* the district court's dismissal of the complaint for failure to satisfy the statute of limitations."  *Karantsalis*, 17 F.4th at 1319 (citing *Fedance v. Harris*, 1 F.4th 1278, 1283 (11th Cir. 2021)).

We liberally construe *pro se* pleadings and hold such pleadings to "a less stringent standard than pleadings drafted by attorneys."  *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).  However, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action."  *GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted), *overruled on other grounds*.

## DISCUSSION

To the extent that we can discern Peers's enumerations of error on appeal, Peers argues that the district court erred in finding that she was not in contractual privity with Defendants, primarily because she paid Defendants for Scism's legal fees. Peers further argues that the district court erred in finding that her claims were time-barred because Defendants' refusal to release Scism's client file tolled the applicable statute of limitations.[2] We address subject matter jurisdiction at the outset before disposing of Peers's enumerations of error in turn.

## I.    Subject Matter Jurisdiction

Defendants did not file a response brief, and thus do not challenge the district court's finding of subject matter jurisdiction based on complete diversity of citizenship. We are nevertheless "obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). We review *de novo* whether the district court properly interpreted and applied the provisions of 28 U.S.C. § 1332 in determining whether the parties established diversity jurisdiction. *Life of the S. Ins. Co. v. Carzell*, 851 F.3d 1341, 1343–44 (11th Cir. 2017) (citing *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010)). "We review the

---

[2] Peers attempts to assert both equitable tolling and the delayed-discovery doctrine. For clarity's sake, we note that the delayed-discovery doctrine does not *toll* the applicable statute of limitations; rather, it prevents a cause of action from *accruing*. *See Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1280 (11th Cir. 2003).

district court's jurisdictional fact-findings, however, for clear error." *Osting-Schwinn*, 613 F.3d at 1085; *see also MacGinnitie v. Hobbs Grp., LLC*, 420 F.3d 1234, 1239 (11th Cir. 2005) ("Factual findings regarding the citizenship of a party are subject to a clearly erroneous standard of review."). The clearly erroneous standard is highly deferential and requires that we uphold the district court's factual determinations so long as they are plausible in light of the record viewed in its entirety. *See Carmichael*, 572 F.3d at 1280.

Under 28 U.S.C. § 1332, federal courts may exercise diversity jurisdiction in cases between citizens of different states when the amount in controversy exceeds $75,000. "Diversity jurisdiction, as a general rule, requires complete diversity—every plaintiff must be diverse from every defendant." *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1564 (11th Cir. 1994). "[T]he party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).

In their motions to dismiss, Defendants asserted that Peers resided in Florida rather than New York, thereby defeating diversity. Peers had a Florida driver's license, was registered to vote in Florida, and owned real property there, but the district court noted that Peers had provided an internet bill for her property in New York, a copy of her temporary New York driver's license and a receipt of her submission to register to vote in New York. Peers had also asserted that her property in Florida was uninhabitable, and

that the COVID-19 pandemic had caused delays in securing documentation to verify her residency. The district court found that Peers had established herself as a New York citizen "[b]ased on her allegations and the totality of the evidence."

Peers did not apply for her temporary driver's license or register to vote in New York until *after* Defendants challenged her citizenship in their motions to dismiss. Peers's timing in pursuing this substantiating evidence casts some doubt on the legitimacy of her New York citizenship, but the fact that she was able to obtain the temporary license makes it at least plausible that she was indeed a New York citizen. Therefore, the district court's jurisdictional fact-findings as to the diversity or amount in controversy requirements were not clearly erroneous, and we decline to upset the district court's determination of subject matter jurisdiction.

## II.    Crimes Against Humanity

As an initial matter, we dispose of Peers's claim that Defendants' failure to release Scism's file constitutes a crime against humanity. Courts typically only recognize crimes against humanity in the war crimes context, in suits for violations of international norms. *See Doe v. Drummond Co., Inc.*, 782 F.3d 576, 580 (11th Cir. 2015); *see also Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1247 (11th Cir. 2005) (affirming dismissal of a crimes against humanity claim because the complaint did not supply facts indicating "widespread or systematic attack" against civilian populations). The facts of this case simply do not implicate crimes against humanity.

### III.    Professional Negligence - Statute of Limitations

In diversity cases, federal courts apply the forum state's substantive law—here, Florida law applies. *See Mesa v. Clarendon Nat'l Ins. Co.*, 799 F.3d 1353, 1358 (11th Cir. 2015); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under Florida law, plaintiffs must bring professional negligence or legal malpractice[3] actions within two years from the time the cause of action is discovered or should have been discovered with the exercise of due diligence. *See Larson & Larson, P.A. v. TSE Indus., Inc.*, 22 So. 3d 36, 41 (Fla. 2009); Fla. Stat. § 95.11(4).[4]    Additionally, "[f]or statute of limitations

---

[3] Florida courts have treated professional negligence claims against attorneys and legal malpractice claims interchangeably. *See Perez-Abreu, Zamora & De La Fe, P.A. v. Taracido*, 790 So. 2d 1051, 1053–54 (Fla. 2001); *Espinosa v. Sparber, Shevin, Shapo, Rosen and Heilbronner*, 612 So. 2d 1378, 1380 (Fla. 1993) ("[T]he estate may maintain a legal malpractice action against [the attorney] for any acts of professional negligence committed by him during his representation of [the client]."); *see also Dingle v. Dellinger*, 134 So. 3d 484, 487 (Fla. Dist. Ct. App. 2014) ("Because the party who retains an attorney is in privity with that attorney, that party may bring a negligence action for legal malpractice.").

[4] At all times relevant to this case prior to March 24, 2023, Fla. Stat. § 95.11(4)(a) provided that the two-year period of limitations applied to actions for professional malpractice, other than medical malpractice. Effective March 24, that provision moved, without substantive modification, to § 95.11(4)(b). The new § 95.11(4)(a) provides that a two-year period of limitations applies to "an action founded on negligence." We simply cite to § 95.11(4) for clarity—regardless, a two-year period of limitations applies to either subsection. Moreover, even if amendment of this section purported to modify the applicable length of time to bring a claim, Florida courts apply statutes of limitations *prospectively* "unless the legislative intent to provide retroactive effect is express,

purposes, a cause of action for legal malpractice does not accrue until the underlying adverse judgment becomes final, including exhaustion of appellate rights." *Law Office of David J. Stern, P.A. v. Sec. Nat'l Servicing Corp.*, 969 So. 2d 962, 966 (Fla. 2007); *see also Silvestrone v. Edell*, 721 So. 2d 1173, 1175 n.2 (Fla. 1998) (outlining the process for full exhaustion of appellate rights, after which "the final judgment becomes final"). The district court noted that Scism was convicted in 2009 and determined that the statute of limitations likewise began to run in 2009. There is no evidence in the record explicitly confirming that Scism exhausted his appellate rights in 2009, but Peers does not contest the district court's finding that the underlying adverse judgment became final that year anywhere in her brief. As such, we are left to presume that the underlying judgment against Scism did in fact become final in 2009, and thus, absent an exception, the two-year statute of limitations began to run that year.

Peers asserts, or attempts to assert, equitable tolling and the delayed-discovery doctrine as exceptions to the statute of limitations, but we find no grounds to apply either exception in this case. With respect to equitable tolling, Peers waived that argument by not first asserting it properly before the district court. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be

---

clear and manifest." *Homemakers, Inc. v. Gonzales*, 400 So. 2d 965, 967 (Fla. 1981); *see also Arrow Air, Inc. v. Walsh*, 645 So. 2d 422, 424 (Fla. 1994).

considered in this court." (internal quotations omitted)).   In her complaint, Peers excerpted a portion of *Machules v. Department of Administration*, 523 So. 2d 1132, 1133–34 (Fla. 1988), that defined and clarified the doctrine.   Meanwhile, she did not mention equitable tolling at all in her memorandum opposing Defendants' motions to dismiss, other than perhaps alluding to it by declaring that "[i]f a defendant has caused a plaintiff not to file until after the statute expired, the court usually will automatically waive the statute and allow the plaintiff to file."   Peers cites no authority for this assertion.   Neither cut-and-paste reasoning from an opinion, nor inaccurate, bare assertions that *may* implicate a helpful legal doctrine adequately raise an argument to a district court, especially without explanation of why such doctrine should apply to the case at bar.[5]

Even if we found that the vague references to equitable tolling in her complaint and memorandum in opposition sufficiently raised the argument in the district court, Peers has abandoned the argument on appeal.   *See Access Now*, 385 F.3d at 1330 ("[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned

---

[5] The prohibition on considering issues first raised on appeal is not absolute. We have identified five exceptional circumstances "in which it may be appropriate to exercise this discretion and deviate from [the standard] rule of practice," such as when failure to consider a new argument would result in a miscarriage of justice. *See Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355, 360–61 (11th Cir. 1984); *Blue Martini Kendall, LLC v. Miami Dade Cnty. Fla.*, 816 F.3d 1343, 1349 (11th Cir. 2016).   Peers, however, does not argue that any of the exceptional circumstances exist here, and we do not find that any such exceptional circumstances are present in this case.

and its merits will not be addressed."). Peers offhandedly notes in the Statement of the Proceedings section of her brief that Defendants' "refusal to release Mr. Scism's client file has placed a toll on the statute of limitations." Later in her brief, Peers similarly states that "[t]he time has tolled to December of 2008, and we cannot move forward without the former client files," but fails to elaborate further. Peers includes the same excerpt from *Machules*, 523 So. 2d at 1133–34, that she included in her complaint, but also cites two cases from the Ninth Circuit which provide that an attorney's egregious misconduct can warrant equitable tolling.

These perfunctory references to tolling without supporting arguments or authority are not enough to save the issue from abandonment, nor are references to authority addressing tolling (particularly mere persuasive authority) without further discussion or citation to facts in the record on which Peers might rely. "We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014); *see also Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) (explaining that "an appellant's brief must include an argument containing appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies," and that "simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal") (quotation omitted). Appellants can also abandon an issue by merely making passing

references to it in the "statement of the case" section without elaborating further in the argument section.  *See Sapuppo*, 739 F.3d at 681–82; *see also Kelliher v. Veneman*, 313 F.3d 1270, 1274 n.3 (11th Cir. 2002) (holding that mentioning a claim in the summary of the argument section is not enough to raise the issue for appeal and that the claim is deemed abandoned).

Finally, even if we found that Peers sufficiently raised the equitable tolling argument in the district court *and* maintained it on appeal, the doctrine simply does not apply to the facts of this case.  Defendants' failures to correct the dates in the first count of Scism's indictment or to "argue[] and persuade[] the judge" to release the foster care files "for verification purposes" both occurred during their representation of Scism, prior to his conviction.  Defendant Aulls's attempt to obtain more money from Peers via threats and Defendants' disregard of Scism likewise occurred prior to Scism's conviction.  As such, Peers was aware of the key facts underlying her claims against Defendants by the time Scism was convicted in 2009 at the latest, and thus cannot contend that she could not have discovered the basis of her claims with reasonable diligence.  Consequently, Peers cannot establish the necessary factual predicate for applying equitable tolling.  *See Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006) ("Equitable tolling is appropriate when a movant untimely files because of *extraordinary circumstances* that are both beyond his control and unavoidable even with diligence." (quotation omitted)).

21-13089            Opinion of the Court            13

Defendants' failure to release Scism's case file does not change the fact that Peers knew or reasonably should have known of Defendants' tortious acts by 2009, meaning her reliance on the delayed-discovery doctrine also fails. *See Raie*, 336 F.3d at 1280 ("The 'delayed discovery' doctrine generally provides that a cause of action does not accrue until the plaintiff either knows or reasonably should know of the tortious act giving rise to the cause of action." (quoting *Hearndon v. Graham*, 767 So. 2d 1179, 1184 (Fla. 2000)). Because neither equitable tolling nor the delayed-discovery doctrine apply here, the two-year statute of limitations began to run on Peers's claims in 2009 and expired in 2011. Therefore, we agree with the district court that Peers's claims were time-barred in 2020. Because we conclude that the applicable statute of limitations barred Peers's complaint, we need not reach the merits of her professional negligence claim.[6]

---

[6] We do not mean to imply that Peers would have established the necessary privity for this claim. *Espinosa*, 612 So. 2d at 1380. Peers potentially could have shown that she was directly party to a legal representation contract with Defendants, for which Scism would have been a third-party beneficiary. Even liberally construed, however, Peers does not plead specific facts about the nature of her agreement with Defendants sufficient for such an inference. Meanwhile, the argument section of Peers's brief contains several sections copied and pasted from the district court's order, and otherwise contains conclusory or irrelevant statements without cognizably citing to the record or explaining why the district court erred.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's dismissal of Peers's claims with prejudice.